STATE OF MAINE                                                    SUPERIOR COURT
ANDROSCOGGIN, SS.                                                 CIVIL ACTION
                                                                  DOCKET NO. AP-02-019

HART'S CLASSICS, INC.,

         Petitioner

         v.                                                       **DECISION ON APPEAL**

STATE OF MAINE,
DEPARTMENT OF PUBLIC SAFETY,
BUREAU OF MAINE STATE POLICE,

         Respondent                                               SEP   8   2003

         Petitioner Hart's Classics, Inc. (Hart) is a motor vehicle repair facility that is

licensed as a motor vehicle inspection station by the Maine State Police who maintain

oversight of inspections to assure that vehicles on Maine's roads are safe.

         The rules and regulations regarding motor vehicle inspections clearly place the

responsibility of compliance on the licensee.

>    The owner [Hart], . . . obligates himself . . . and the station which
>    he . . . owns to comply with the rules, regulations, and laws of the state of
>    Maine.

Maine Motor Vehicle Inspection Manual, § 1.1.1, Record p. 22 (Manual).

         Hart appeals the government agency decision to suspend its motor vehicle

inspection station license for a one-year period, M.R. Civ. P. 80C. Following complaints

of faulty inspection, inspection violations, and several warnings issued to Hart, the

State Police suspended Hart's inspection license and the inspection mechanic for a

three-month period beginning March 14, 2001.

         During Hart's three-month suspension period, a roadside inspection by Troopers

Donald Armstrong and David Armstrong on May 3, 2001, revealed that Hart had

violated the suspension. Trooper Armstrong[1] issued a written warning. In August, Hart again issued an inspection sticker on a vehicle that should have otherwise failed. The one-year suspension resulted.

Hart contends, *inter alia*, that the suspension of its inspection station license violated constitutional and applicable statutory provisions, was in made in error of law, and that insubstantial evidence exists on the record to support the agency's decision. Further, Hart claims abuse of discretion by the agency. Hart claims it had no knowledge or reason to know of its mechanic's "incompetence." Hart further contends that Trooper Armstrong "took it upon himself" to shut down the business. Respondent State of Maine contends that it may disqualify Hart as a licensed inspection station based upon Hart's demonstrated failures and violations.

It is hard to escape or fail to comprehend the directness of the rule that the owner is responsible for what happens in his garage. The petitioner's claims that it is vague and he should not be held accountable for the failures of his mechanic are not persuasive.

Section 1.6.1 of the manual authorizes a state police inspection officer to suspend an inspection license for up to six months

> [if] in the opinion of the inspection officer, a flagrant violation of the law or regulations pertaining to state inspections has been committed by an employee of a licensed inspection station or has been allowed to occur by the licensee, the officer may suspend the mechanic's license and/or the station license for a period of up to six months for the first offense.

Manual, § 1.6.1 (R., p. 25).

A second "flagrant" violation will be grounds for a suspension of up to one year or a complete revocation of license.

---

[1] The State's brief does not specify which Trooper Armstrong.

The record (p. 12) shows the history of violations and enforcement actions against Hart's Classics: one warning in 1999, and three warnings and a suspension in 2001. None of the violations listed indicate that it was "flagrant," nor did the decision of the hearing officer (R. pp. 20-21) make any finding of a flagrant violation for either a first or second violation.[2] In fact, the hearing officer's decision is mainly concerned with Hart's responsibility for the mechanic as an employee; findings that are adequately supported in the record.

As to the violations leading to the suspension that is the subject of this appeal, the hearing officer only found that "[i]t is clear the vehicle should not have been issued a sticker." (R., p. 20.) Even then, the officer found that "[t]he trooper could not state with certainty that the hole under the cargo compartment went all the way through into the compartment itself and therefore is not part of the evidence considered in defects." (R., p. 20.) This mitigates against the violation as flagrant.

Lengthy suspensions of six months or more may be based only on a determination that the violation is flagrant. A licensee should have knowledge and be informed of the serious nature of the violation when a suspension is issued. In criminal matters an enhanced penalty cannot be imposed unless it is "pled and presented to a fact-finder." *See State v Hodgkins*, 2003 ME 57, ¶ 10 – 11 (citations therein omitted). Where a party in an administrative matter is subject to various levels of penalties that can have an obvious adverse impact on his business, this court fails to see any difference that what is a minimal requirement in criminal matters.

---

[2] The inspections officer's reports, R. 57-75, do not find that any of the violations resulting in suspension or a warning were flagrant.

The report of the August 15, 2002, violation does note that "do [sic] to the *history* involving . . . the licensee . . ." a one-year suspension was imposed.

Although Hart's history of compliance is not exemplary, it is the nature and not the number of violations that bring about the severe penalty of suspension.

The entry will be:

> The decision of the hearing officer and the suspension of the petitioner's inspection license is vacated.

So Ordered.

DATED: August 29, 2003

Thomas E. Delahanty II
Justice, Superior Court

Pet - Ralph Dyer

Def - Robert Perkins
AAG

4